Mr. Evans. Good morning, Your Honors. Jonathan Evans for Petitioner's Center for Biological Diversity and Center for Food Safety with me here today is Stephanie Perrin on behalf of petitioners at the council table. May it please the court, I would like to reserve seven minutes for rebuttal. This case involves the approval by the Environmental Protection Agency of a new systemic fungicide, Imperfluxum. The focus of petitioner's argument today will be on a clear violation of the Endangered Species Act that all the parties admit. Because of the unique circumstances present here of recent actions by in the Environmental Protection Agency and of an intervening decision by this court, this panel today should remand without vacater and order a deadline of spring of 2023 for the agency to comply with the Endangered Species Act. Why without vacater? Well we we are waiving our arguments related to vacater today, Your Honor, because of a couple interesting unique circumstances related to the timing of this. Isn't that the only debate here is whether it's because EPA has already said they should remand, right? Correct. And we and so I thought we were only here for vacater. We are here for remedy, Your Honor. And you're saying no vacater? No vacater with a court-imposed deadline. And we think that that's that's critical because as as this court is very well aware when the circuit court has remanded to the EPA without a deadline, it's an invited agency indifference. Petitioners in the Cyan-Trinola poll case out of the DC Circuit were forced to return to a petition for writ of mandate after five years after the remand order. I'd be happy to provide the information. I'm still not following. Yeah, of course, Your Honor. If we if we remain with vacater, then the registration is eliminated, yes? If the if the decision is vacated, the manufacturer presumably has a strong interest to push the EPA to get on with it to do this additional necessary evaluation under the other extinct species statute. So why do we have any fear that the agency would sit on its Well, the circumstances here involve the agency's good faith in terms of taking steps since this case was filed in the past several years to address the Endangered Species Act violations. And I'll point this court to a couple different things that have come down just within the past... I want to hear what you have to say, but wasn't that already gonna be done by like September or October? Well, the spring of 2023 is the EPA's proposed deadlines for an ESA effects determination. They also said that they would do a draft Endangered Species Act effects determination by the fall of this year. You know, that is again roughly, you know, over two years past the initial filing of the case. But again, the circumstances have changed, in particular in regards to agency action. I'd like to inform the court of a couple actions by EPA in this context. On June 21st, EPA announced two pilot programs to address issues involving endangered species affected by pesticides. In particular, the first of its pilot project was what they refer to as EPA's Vulnerable Species Pilot Project, which adopts groups of mitigations for different categories of pesticides, such as herbicides, insecticides, fungicides, this fungicide we have here. Those mitigation measures are specifically announced in relation to mitigating harm to endangered species in particular. The second pilot project announced on June 21st involves what they refer to as the Federal Mitigation Pilot, which is developing approaches for identifying and implementing earlier mitigation measures for approximately a dozen endangered species, some of the ones that are similarly affected by infrafluxum as well. These are two steps from EPA's work plan, which petitioners provided as supplemental to the authority to the court, which demonstrate that EPA has taken some good faith steps to complying with the Endangered Species Act. Another important intervening fact, Your Honors, is just on June 30th, the National Marine Fishery Service issued a biological opinion related to three insecticides, analyzing the effects on over a hundred endangered species or distinct populations. And importantly, EPA and the registrants came together to agree to mitigation measures to reduce the harm to Endangered Species Act affected species. So those are two steps that we think are important, particularly in regards to passage of time, Your Honor. When we filed this case, we have a rather sorted history of EPA's non-compliance. We've seen some recent steps for EPA taking steps that can really address a backlog of a lot of these Endangered Species Act violations, and combined with a court-enforceable deadline of the spring of 2023, the importance... So you're basically willing to rely on EPA, but you want a little bit of nudge from the court with a court-imposed deadline. We do think that court oversight is important, Your Honor. I mean, we propose that the court order a deadline of the spring of 2023, which is what EPA proposed. We're not asking the court to engage in any type of... And then basically you'd have a theoretically a mandamus action if they don't reach that? Correct, Your Honor. We think that it would be reasonable for you to hold EPA to the deadline it's proposing. If not, we would have to return to the court to enforce their decision to comply with the Endangered Species Act. A remand without vacater would just be for years here, and here it's important to recognize that we don't have a congressional backstop or any other backstop for EPA's failure to comply with the Endangered Species Act. I get that. One of the ways I was looking at this before we got a little bit of a curveball here today was, you know, this is different. I mean, ESA seems to be different than a NEPA case where, you know, ESA, there's, you know, potentially substantive harm that's at issue. And, I mean, I guess if you're not asking for it, you know, does the... The only question is, does the court have an independent duty to go in and say, hey, no, you know, we normally will look at these and vacate, but I guess what I'm hearing is that would upset the apple cart, and you're saying don't do that right now? Well, we're saying, frankly, we're withdrawing those vacant arguments, so those are no longer before you. Maybe I'm missing something here, so help me out. So, the EPA approved the use of this pesticide without the statutorily required consideration of the Extinct Species Act, correct? The EPA admitted it did not consider the Extinct Species Act. So, since its registration failed to comply with the law, why shouldn't we say its registration is vacated? That seems to me to, regardless of the position of the parties, that seems to me to follow from our obligation to see that the law is in force. You want us to do a different kind of oversight and give them a deadline, and you may have your own strategic reasons for preferring that, but why isn't this the simple-minded approach to be, you broke the law, you didn't do X, so we vacate your registration, now go and comply with the law? Obviously, from the briefing, Your Honor, we do not completely disagree with that argument, but given the circumstances where we're only nine months with the Endangered Species Act for this case, that's before the next growing season, most likely, for the application of n-perflux into a lot of crops. We do, given, we think given the circumstances of these recent and good faith actions by EPA and, you know, what we think would be a... Oh, it sounds to me like you think you're going to win on the Endangered Species Review, and that's why you want the deadline and all like that, but supposing, who knows, they come back and they say, you know, this turned out to be scientifically much more complicated than we realized, and it, there's no harm in the meantime, because under my hypothesis, the registration has been vacated, so the pesticide's not out there, but we're going to need more time before we can really decide whether it fulfills the endangered species requirements. Why isn't that a much more sensible approach in that hypothesis than to say, my gosh, you've got to do it, we're not going to withdraw the registration, but by God, you've got to make this determination in X number of months. Well, we're looking to EPA's representation that it intends to do so based on on this presentation of this court and in its work plan, and we think that, you know, the EPA, the Endangered Species Act has both procedural and substantive requirements. When we've seen the Environmental Protection Agency go through the consultation process to do that species-by-species analysis, as your Honor's well aware from the National Family Farm Coalition and the Enlist Duo case, it has reduced the harm to endangered species. EPA has demonstrated more recently that it can do that complicated analysis with the National Marine Fisheries Service and the Fish and Wildlife Service, and in February of this year, they did a biological opinion for an insecticide malathion that covered over 1,600 threatened and endangered species. So we think when the agency complies with the law, it provides the type of beneficial impacts for endangered species and also reduces the type of regulatory uncertainty where we have a vacator at the vacator and... One last question, and then... Sure, your Honor. Do I understand that under your approach, the pesticide would continue to be used during this period while this endangered species evaluation was going on? Correct, your Honor. It would still... So if you're right about the ultimate merits, you want another nine months to a year of fish being killed because it suits your long-term strategy? Well, what we do think is critically important here is that, you know, the potential harm would be minimized for multiple reasons, your Honor. One, because it's a limited prescribed amount of time. Even if, let's say, this court comes out with a decision vacating this decision, and by the end of this year, that would then be three months. So that, again, a limited amount of time, you know, by which there would be harm to species. We do think that pushing EPA to really comply with the Endangered Species Act is the better outcome, providing regulatory certainty here. We also know that the adoption of in perfluxum is minimal at this point. As the valent noted in its declaration, it's only really being applied to one crop, which is peanuts. It won't be fully adopted until 2025 for seed uses. It's expected full launch this year. So we do have a... It does seem strange to me that the Center for Biological Diversity should feel that it's okay for fish to be killed by this pesticide because it's only going to be a relatively smaller number of fish than it would be if it were used more in a more widespread fashion. But that apparently is your position. Yeah, well, we are gravely concerned with the harm to endangered species and do not... Perhaps you've already kind of touched upon this, but can you tailor your request here not to vacate within the framework for the allied signal, you know, DC circuit framework, two-step framework that, you know, we've typically applied whether to vacate something. Can you kind of tailor that around that framework? Again, Your Honor, we're withdrawing and we're waiving that argument for the vacater argument for the purposes of today. And so we would also point the court not only to the requested remedy of a remand without vacater in order that petitioners and intervener have proposed, but also EPA provided an alternative remedy here of maintaining jurisdiction until spring of 2023 while that action would... while the ESA effects determination would occur. So we do think that, again, since we've withdrawn the vacater argument, it's not appropriate. Has this been communicated to EPA and opposing counsel? It has, Your Honor. Again, this is all recent developments and we did... but we did communicate that to them and noted that we would be pushing for the remedy of remand without vacater in a deadline during the argument today. So your withdrawal of the vacater request is across the board. So if we decide the hell with the deadline, we'll give them all the time they want. You can't come back and say vacater because you are withdrawing that completely and for the purposes of this litigation. We do think it's critical that the court provide some type of backstop for agency. But if we disagree with you, you can't have it both ways as a matter of law, I don't believe. Either you're withdrawing your vacater for purposes of this appeal or you're not. We are, Your Honor, and we'd be forced to have to come back to this court involving individual products that have been proposed for approval. Again, you know, there are other products that would come back to this court for approval. We do note that in the Federal Register recently, the valent did propose some additional uses of in perfluxum, and I apologize I don't have those immediately handy for you, but we do think that the harm will continue and we do have the ability to challenge those individual product registrations at the District Court or the Circuit Court depending on whether there's notice and comments. So we can come back to the court and get a remedy if EPA does not comply with this Endangered Species Act obligation and continues to approve products. What we do think is the cleanest approach is to really make sure that this court provides the oversight to ensure that EPA complies with the Endangered Species Act. And we think that also complies with the recent case NRDC versus EPA that just came down last month involving the herbicide glyphosate. The court looked to the congressional backstop of October of 2022 and said that provides that sort of backstop for the EPA to ensure that it will comply with the Endangered Species Act. Here we don't have that backstop. We have a registration renewal that occurs every 15 years. We don't think that the ongoing harm would be appropriate, and if the court denies any type of oversight or remedy for this, we do think that we would have to come back to the court with these individual pesticide registrations. We also would note that we've reached out to EPA to potentially resolve this case because we're not that far apart. You know, these are recent actions and we've proposed to EPA. We haven't had any in-substantive settlement discussions, but we do think that if we can ensure that EPA complies with the Endangered Species Act, that provides benefits not only in terms of regulatory certainty, but also provides substantial benefits for EPA's compliance with the law for not only for perfluxin, but a range of other products. We need to get EPA on track, and so the vacater in this context may, you know, upset the apple cart a little bit more, and what we're looking for is agency compliance and hopefully getting the agency on the right track, and they represent they're trying to do it, and we just need to help a nudge from the court and a little oversight to make sure that they meet their commitments. So again, the date you're saying, I mean, you want an order that says in the spring of 2023, or should we say April 1st, 2023, what are you asking for? April Fool's Day may be a little bit auspicious, but you know, March 31st, we do think in the spring would be... How about April 15th in honor of income tax? Either of those dates. We would request April 15th in honor of the spring deadline, and we would leave it to EPA if they propose some deadline in the spring, we won't object to that, and I'll save the rebranding for rebuttal. Thank you. Thank you, Your Honors. May it please the court. My name is Anthony Ortiz, Department of Justice, representing the EPA in this case. I appreciate you flying all the way out here from DC, but it seems like we're done, aren't we? It seems like this, Your Honor. I believe the only remaining issue is whether this court should order a court-ordered deadline in this case. All parties agree that remand... April 15th, okay? No, Your Honor. Okay. You had to come out here for some reason. EPA believes that the end of both fall is December 21st, 2022, and the end of spring would be June 21st, 2023. So you want as much of spring as you can possibly get. Yes, Your Honor, and technically it would still be spring at that point. But EPA does not believe that a court-ordered deadline is necessary in this case. There is simply... First, we would reaffirm that EPA is on track to meet both obligations. We would agree that we have the discretion to do that, right? Absolutely, Your Honor. Yeah, because... and I think... I mean, why don't you just agree to it? Like, that seems like a pretty good deal. Well, Your Honor, EPA essentially has agreed to that, by declaration, has affirmed that it can do the draft effects determination by fall 2022 with an optional notice and comment period, which is not required under FIFRA for transparency's sake. It also is affirming that it is on track to meet the final effects determination by spring of 2023. So... Yes, Your Honor. The... if I understand the science of all this, it's not so easy to make some of these determinations with respect to endangered species. What happens if, lo and behold, let's say we give you the, you know, end of June or whatever, and then you find that, well, we could make a decision, but it wouldn't be as clearly scientifically validated as if we had another year. Yes, Your Honor. So, then you come back and say, sorry about that, give us another year. And we then get into the situation, which the LULAC case well represents, of endless delays, and this deadline, then extend the deadline, change the deadline, renew the deadline, which doesn't look so good from a standpoint of how the court should be operating. A deadline should be a deadline if it's a court. But on the other hand, if in my hypothetical, we say a deadline's a deadline, you've got to act, then you're being forced to act on, in my hypothetical, information that you don't think is yet dispositive. So, I don't see why it makes sense to have a deadline. Now, I know that's your position, but now you seem to be saying to Judge Nelson, oh, well, all right, we'll take a deadline, sort of. But I want to go back to your original position, which is that maybe a deadline is not called for. Well, Your Honor, our current position is a deadline is not called for, but if the court needs reassurance that, you know, we can agree to reassurances to the court that we are following our stated deadlines as expressed in our declarations. For example, this court can retain jurisdiction, this court can hold the case in abeyance, this court can order us. If we don't give it, if we don't give a deadline, though, what are we, I mean, I'm not sure we can retain, I guess we could retain jurisdiction, but as for purposes of this case, it's over because Center for Biological Diversity is waiving vacature, which was the only issue. I guess we could retain jurisdiction over the ultimate decision that EPA eventually comes up with, but if we don't give a deadline now, we're sort of done for purposes of this case. I mean, it sounds like this would more likely come up in context of a different case. I would agree to that, Your Honor, but the assurances that I've received from EPA is that we are on track to meet our stated deadlines. EPA has just a track record of blowing deadlines in ESA cases. I mean, it's just case after case after case where EPA has flouted the deadline because, you know, the EPA has violated it over and over and over again. I mean, myself alone, I just have had these cases where the EPA just blown the deadline completely. So, I mean, you know, just to be blunt, reassurances really mean nothing. Well, absolutely, Your Honor. However, April 12, 2022, EPA issued its work plan, which incorporates its allocation of resources for certain cases, Imperfluxum being one of them. In Appendix A, it indicates that it considers Imperfluxum a court-committed deadline, which internally it considers functionally a court-ordered deadline. From the beginning of the litigation, it has moved with great speed for this, for Imperfluxum. In fall of 2021, it began its effects determination. It is reaffirming through two declarations that it is on track to meet its stated deadlines, and we are reaffirming today that we are still on track, Your Honor. And in some recent cases that have been issued, for example, the Neonics case, which involved three AIs, that was recently in June 2022, was issued on time and, in fact, two weeks early. Unprecedented. Thank you, Your Honor. All right, I think we're good. I guess we'll hear if there's a reason. Yeah, we're always, you flew out here, you might as well stand up to the podium. Thank you, Your Honor. Yes, we're in a slightly different position than I was with Amanda Berman on behalf of the intervenor, Valand. I would like to take a couple of minutes. First, we agree with petitioners that the right remedy here is remand without vacature. We really appreciate their change in position on that key issue. From Valand's perspective, it is absolutely fine for this court to enter an order setting the deadline that EPA has committed to. For our part, Valand stands ready to work with EPA to identify any mitigation measures that the ESA affects determination and implement those. And that's what we would be doing over the notice and comment period that EPA has sketched out here between this fall and next spring. So we think that we should have the opportunity to do that. But, Judge Rakoff, because you raised the question of whether the court could still consider vacature even though that argument is waived, I want to just highlight two reasons why it really isn't the right a fungicide that is equally or less toxic for most species but applied at much lower rates. And EPA finds this throughout its decision. You can see it at page ER 20, ER 24. It consistently reiterates that this is lower risk than the alternative fungicides. So this is one of those cases where vacature would in fact not be environmentally beneficial because it would mean that the growers who have adopted Imperfoxam, and there are many growers who have begun to adopt this product for peanuts, for apples as well, but they would be reverting to fungicides that have to be applied in much greater quantities. And it's up to a hundred times greater in many instances. Well, that's a good point, but really my point for what it's worth, though I have a feeling it's going to be booed in any event, is that if a statute, if the law says you before you can approve the registration of X, good or bad, you have to do Y and Z, and they only do Y, then I don't see how that registration can stand. But it has nothing to do with whether this is the greatest pesticide ever to come down the pike or not. Well, Judge Rakoff, I think that's where the Allied Signal Analysis comes in. And prong two of that analysis asks, would vacature in this instance be disruptive? And in cases like the National Family Farm decision regarding the Enlist Duo pesticide, in the DC Circuit's decision in 2017 in Center for Biological Diversity regarding Cyantrenopril, which had the same error, there was no ESA analysis, and that was the same issue there, and the court decided not to vacate because it recognized that EPA had assessed the alternatives and found that it was lower risk. And so where you have a case where it would actually not be environmentally beneficial, but in fact potentially environmentally harmful, in addition to disruptive to farmers, and of course the economic harm to my client, Valent, that's not an appropriate circumstance for a vacature. So we would ask the court to look at the Allied Signal Analysis, and I think that analysis very much points to remand without vacature in this case. Doesn't this fungicide last longer in the environment than the other comparable fungicide? So maybe the analysis here isn't as clear-cut? Your Honor, EPA also took persistence into account, and bluntly what EPA found was this is basically kind of in the middle of the pack in terms of Charlton submitted a declaration in support of our request for remand without vacature, and she identifies three of the alternatives that are more persistent in the environment. So it's kind of like toxicity, this is in the middle of the pack on toxicity and persistence, but importantly the use rate is so much lower than every other alternative out there. And another important thing to consider, and you could see this comparison in the chart at Table 1 attached to Ms. Charlton's declaration, which pulls from information in the record, impure fluxum is subject to label requirements, mitigation measures that the alternative older fungicides are not subject to. There is no aerial application allowed. That is not true for any of the other alternatives. There is a 50-foot buffer requirement for ground spraying. None of the other alternatives identified in Table 1 for peanuts have a 50-foot buffer. Nobody else has a 50-foot buffer. So, Your Honor, it's also important to remember that you're going back, if this were vacated, farmers would be reverting to fungicides that have to be applied in much greater rates and don't have these environmentally protective measures as requirements for application. So again, we think this is a classic situation, like the Enlist Duo decision, where vacature would do more environmental harm than good. And so, Your Honor, we, you know, we join all the other parties at this point in asking that the Court remand without vacature in light of the unique circumstances at issue in this case. And if the Court has any questions about any of the science behind that was discussed in the briefs, I'd be happy to answer them. No, but you raise the critical question of what's the appropriate pronunciation of V-A-C-A-T-U-R. Is it vacateur or vacature, as you say, or maybe some people would say vacateur, I don't know, but I think this Court probably doesn't have to reach that issue. Well, Your Honor, I would admit I may be pronouncing it wrong, but I've always said vacature, for whatever that is worth. Thank you, counsel. Thank you. Do we need to hear any more? I do appreciate knowing that I'm not the only one having difficulty pronouncing vacature, vacateur, vacature. I would just note, if the Court remands for EPA to address the CSA violations, it can also remand and address the FFRA violations, which the parties note in its brief. It doesn't have to reach those issues if a voluntary remand occurs. I mentioned that there were new applications by Valant earlier this year for expanded uses. Those are at 87 Federal Register 36851. Those are new applications for wheat, rapeseed, and cotton. We'd prefer that this Court provide a deadline for the Endangered Species Act as opposed to forcing us to come back to the Court to get them to comply with the ASA obligations for those new applications. And Judge Lee, you noted, you know, that the EPA has a very sordid history of compliance with the Endangered Species Act, but, you know, we are hopeful that there's a sea change in the agency, and if they're able to get the ASA effects determinations done, get these pilot programs launched, they're able to get on the track for a very substantial backlog. And so we don't want to disregard the push the agency towards compliance with the law, as opposed to, as opposed to vacating in these limited circumstances where we do have some unique... Perhaps it's too premature to ask, but do you foresee challenging the, I mean, so they're going to come up with an ESA analysis. Do you foresee challenging that to say it was insufficient? Well, it really depends on the substance of it, Your Honors. I mean, we have seen these biological opinions issued involving insecticides by National Marine Fishery Service just this, just in June 30th. There are some very substantial steps in terms of buffers and setbacks, but also allow the registrants and farmer and growers to choose from a pick list that will, that gives them the flexibility to choose methods that are more practicable for them, but also provides for substantial protections. You know, I'm not going to say we're never going to have issues with what some of these determinations are, but we're really seeing, you know... But you see this going in a direction, in this particular case, you see it going in a direction where you must have some comfort that you're likely not going to have to... I'm not binding you to anything, but it seems to be going in the right direction. Yes, Your Honor. We're hopeful that EPA has turned a corner and we do think that... But not just on the timing, on the actual substance of what they're going to do. Exactly. And I think that also bears on the timing. You know, if they're not, if they don't know how to deal with the substance, then we're going to have the same situation that, you know, provides great consternation with the court and the parties, where EPA just blows its deadlines and doesn't know what to do. They're trying to figure it out and they're trying to make some substantial steps. And we think that in this limited context here, that Bakatter is inappropriate. And we would like to submit, unless there are any further questions. No, thank you. Thank you, Your Honor. Thank you to both parties, all parties, and we will, that will conclude our arguments for the day and the court stands in recess. All rise.
judges: NELSON, LEE, Rakoff